UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KATRINA FITZSIMMONS,<br><br>     Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>     Defendant. | No.  1:15-CV-03017-RHW<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 20 & 25. Ms. Fitzsimmons brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her application for Disability Insurance Benefits and Supplemental Security Income under Titles II & XVI of the Social Security Act, 42 U.S.C §§ 401-434 & 1381-1383F.  After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 1

## I. Jurisdiction

Ms. Fitzsimmons filed concurrent applications for Disability Insurance Benefits under Title II and Supplemental Security Income under Title XVI on or around September 21, 2011. AR 213-225. Her alleged onset date is November 1, 2005. AR 220. Her application was initially denied on December 30, 2009, AR 130-133, and on reconsideration on March 21, 2012, AR 152-153.

A hearing with Administrative Law Judge ("ALJ") Larry Kennedy occurred on April 25, 2013. AR 41-87. On June 20, 2013, the ALJ issued a decision finding Ms. Fitzsimmons ineligible for disability benefits under Title XVI. AR 19-30. On the same date, the ALJ issued a separate decision finding Ms. Fitzsimmons's claim under Title II was barred by the doctrine of *res judicata*. AR 39-40. The Appeals Council denied Ms. Fitzsimmons's request for review on November 26, 2014, AR 1-6, making the ALJ's ruling the "final decision" of the Commissioner.

Ms. Fitzsimmons timely filed the present action challenging the denial of benefits on January 23, 2015. ECF No. 4. Accordingly, Ms. Fitzsimmons's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 2

can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act.  20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b) & 416.920(b).  Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit.  20 C.F.R. §§ 404.1572 & 416.972.  If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits.  20 C.F.R. §§ 404.1571 & 416.920(b).  If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c) & 416.920(c).  A severe

impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f),

404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c).  To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)).  Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted).  In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

### IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and only briefly summarized here. Ms. Fitzsimmons was 37 years old at the time of her hearing. AR 289. She is a single mother of three children. AR 55. She attended high school through the eleventh grade and did not obtain a GED. AR 52.

The ALJ found that Ms. Fitzsimmons suffers from obesity, lumbar degenerative disc disease status-post anterior fusion and discectomy, and

fibromyalgia. AR 24.  Ms. Fitzsimmons previously worked as a cashier, security guard, taxi driver, telemarketer, and receptionist. AR 28.

### V.    The ALJ's Findings

The ALJ determined that Ms. Fitzsimmons was not under a disability within the meaning of the Act from September 21, 2011, the application date. AR 30.

**At step one**, the ALJ found that Ms. Fitzsimons had not engaged in substantial gainful activity since September 21, 2011 (citing 20 C.F.R. §§ 404.1571 *et seq.* & 416.971 *et seq.*). AR 24

**At step two**, the ALJ found Ms. Fitzsimmons had the following severe impairments: obesity, lumbar degenerative disc disease status-post anterior fusion and discectomy, and fibromyalgia (citing 20 C.F.R. §§ 404.1520(c) & 416.920(c)). AR 24-25.

At **step three**, the ALJ found that Ms. Fitzsimmons did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1. AR 25.

At **step four**, the ALJ found Ms. Fitzsimmons had the residual functional capacity to: lift up to twenty pounds occasionally and lift and/or carry up to ten pounds frequently; stand and/or walk for about six hours in an eight-hour day with normal breaks and sit for about six hours in an eight-hour day with normal breaks;

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 7

push and pull without restrictions except the stated limits for lifting and carrying; occasionally climb ramps and stairs, balance, stoop, kneel, or crouch; never crawl or climb ladders, ropes, or scaffolds; and avoid concentrated exposure to vibrations and hazards. AR 25.

The ALJ determined that Ms. Fitzsimmons is able to perform her past relevant work as a cashier, security guard, telemarketer, and receptionist because these roles do not require the performance of work-related activities precluded by Ms. Fitzsimmons's residual functional capacity. AR 28.

At **step five**, the ALJ found that, in the alternative, in light of her age, education, work experience, and residual functional capacity, in conjunction with the Medical-Vocational Guidelines, there are also other jobs that exist in significant numbers in the national economy that Ms. Fitzsimmons can perform. AR 29-30.

## VI.   Issues for Review

Ms. Fitzsimmons argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, she argues the ALJ erred by: (1) failing to properly reject the opinion of treating physician Dr. Robertson and failing to include the limitations opined by Dr. Robertson in the residual functional capacity findings; (2) failing to provide specific, clear, and convincing reasons for discrediting Ms. Fitzsimmons's symptom testimony; and

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 8

(3) dismissing Ms. Fitzsimmons's Title II claim by improperly applying *res judicata*.

## VII.  Discussion

### A. The ALJ Properly Rejected the April 2013 Medical Source Statement of Dr. Robertson

**1. Legal Standard.**

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than his or her own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

**2. Dr. Robertson's Opinion**

Treating physician Dr. Julia Robertson, M.D., provided a medical report in April 2013, which is the piece of opinion evidence that the ALJ determined to be less than fully reliable. AR 27-28. In this opinion, Dr. Robertson opined that: Ms. Fitzsimmons needed to lay down two to three hours at a time, twice per day; her medication would limit her ability to operate heavy equipment; and she would need to miss at least four days per month due to her impairment. AR 27.

First, the ALJ noted that Dr. Robertson's opinion is not supported by her treatment notes. AR 27. No records from Dr. Robertson indicate treatment nearly as significant as the accommodations she recommended in April 2013. *See generally* AR 444-537. The record regularly indicates normal gait/station, digits, and range of motion. AR 445-502. While fatigue was present regularly, there is

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10**

nothing in the notes that indicate a severity that would warrant the extraordinary level of accommodation recommended in April 2013. *Id.*

The ALJ also noted that Dr. Robertson had not seen Ms. Fitzsimmons for five months prior to writing the April 2013 opinion. AR 27. The Court notes that Dr. Robertson treated Ms. Fitzsimmons for many years, but recent treatment records suggest improvement that's unexplained in the April 2013 medical report statement. The treatment records from her last visit with Dr. Robertson noted that Ms. Fitzsimmons's back pain was slowly improving after her surgery. AR 544. On the same date, her gait/station, digits, and range of motion were observed as normal. AR 545. In light of these relatively mild findings in October 2012, there is no explanation for the extreme limitations provided in the April 2013.

Next, the ALJ pointed out that Dr. Robertson's opinion was inconsistent with Ms. Fitzsimmons's subjective allegations. AR 28. In particular, Dr. Robertson stated that the limitations specified in her April 2013 medical report statement have existed since February 2, 2004, AR 551, but the record shows improvement not accounted for. For example, Ms. Fitzsimmons testified that her back is significantly improved since her June 2011 back surgery. AR 66.

Finally, the ALJ opined that the instructions on the April 2013 medical report statement "impermissibly suggest or coach what the claimant should report and/or what the treatment provider should write to assist the claimant in 'obtaining

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 11

medical benefits.'" AR 28. The instructions, the ALJ asserts, "implicitly, if not expressly," detailed what Dr. Robertson needed to say in the medical report to assist Ms. Fitzsimmons to receive benefits. *Id.*

This is not a mischaracterization of the form. On the first page, it states that "[i]f you need to lay down during the day, make sure your physician understands this as this is important to document with him" and "[t]he need to be absent 3 or more days per month due to your medical condition would assist you in obtaining medical benefits." AR 549. These are highly suggestive phrases that detail what a physician must do to assist a claimant, and if not providing explicit instructions, the implications are clear.

Ms. Fitzsimmons argues that the medical report statement is appropriate because the best practices for Social Security appeals recommend obtaining a medical source statement from a treating physician. ECF No. 20 at 13-14. With that, the Court agrees. The issue here, though, is not that counsel obtained a medical statement to assist Ms. Fitzsimmons' claim, as it is established law that this is not enough to reject an opinion. *See Lester*, 81 F.3d at 832 ("The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them.") The problem is that Dr. Robertson was provided with extraordinarily suggestive language of the requirements needed for Ms. Fitzsimmons's claim to be

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12**

approved. Further, the instructions page was intended for Ms. Fitzsimmons, not her doctor–it did not need to be provided to Dr. Robertson at all.

This suggestiveness on its own may not be enough to constitute a specific and legitimate reason, but when considered with the other reasons provided (the lack of support in the record, the gap between treatment and the opinion, and the inconsistency with Ms. Fitzsimmons's testimony), the ALJ's rationale is soundly grounded in the record and legally sufficient. The Court finds that the ALJ properly excluded the April 2013 medical source statement by Dr. Robertson.

**B. The ALJ properly discounted Ms. Fitzsimmons's credibility.**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 13

reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

### a. Inconsistency with the record

The ALJ cited multiple facts in the record to support his determination that "the overall evidence does not support [Ms. Fitzsimmons's] claim of total disability." AR 26-27. In particular, the ALJ focused on repeated examinations that demonstrated normal gait, station, sensation, and/or range of motion. AR 413, 425, 448, 450, 452, 545.

Ms. Fitzsimmons argues that this is not a meaningful measure of her disability because these findings were normal even the day before major back surgery. ECF No. 20 at 16-17. Ms. Fitzsimmons's interpretation of the medical findings is but one interpretation of evidence. The Court will not disturb the ALJ's findings simply because the evidence is susceptible to more than one rational

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14**

interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also Andrews*, 400 F.3d at 679.

Additionally, Ms. Fitzsimmons's own testimony does not support her claims of disabling pain and limitation. Ms. Fitzsimmons underwent back surgery in June 2011. AR 417-418. Ms. Fitzsimmons acknowledged that the surgery helped her condition significantly. AR 66. While she still has some pain, she repeatedly stressed how thankful she was to have received this surgery. AR 66. The ALJ drew the conclusion that the surgery was successful and relieved some of Ms. Fitzsimmons's symptoms.

Further, the record demonstrates that Ms. Fitzsimmons's fibromyalgia is improved through medication and activity. AR 61-63. She testified that medication provides her some, although not total, relief. AR 61. Based on her own admission, activity is more beneficial than staying in bed throughout the day to manage her pain. AR 63. She also recognized that physical therapy stretches are beneficial, yet she does not regularly perform them. *Id.*

The ALJ pointed to multiple pieces of evidence in the record that were inconsistent with Ms. Fitzsimmons's subjective complaints, including inconsistency in her own testimony. The Court finds no legal error in the ALJ's conclusion regarding Ms. Fitzsimmons's credibility based on these inconsistencies.

//

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15**

**b. Gaps in treatment**

Next, the ALJ pointed to significant gaps in treatment, despite access to medical insurance coverage. The ALJ reasoned that gaps imply Ms. Fitzsimmons's impairments were not as severe as alleged because if they had been, she would have sought treatment.

A claimant's statements may be less credible when treatment is inconsistent with the level of complaints or a claimant is not following treatment prescribed without good reason. *Molina*, 674 F.3d at 1114. "Unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of [a] claimant's pain testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). However, it is inappropriate to reject failure to treat when the claimant could not afford the necessary treatment. *See Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999) (quoting *Smolen*, 80 F.3d at 1284).

The ALJ pointed to the period between January through October 2012, during which Ms. Fitzsimmons did not seek treatment for her back problems or her fibromyalgia. AR 27. Further, at the end of this period, there was only a single follow-up visit with no subsequent notes. *Id*.

Numerous missed appointments and cancellations in the record support the ALJ's conclusions. Dr. Robertson's records show that Ms. Fitzsimmons was seen for eleven visits between June 5 and August 10, 2007, with seven cancellations and

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16**

four "no-shows." AR 333. On September 6, 2007, Dr. Robertson noted that Ms. Fitzsimmons had missed the last six scheduled appointments, and "[l]ong term goals were not assessed as the patient did not return for physical therapy." *Id.*

A lack of financial ability to seek treatment has not been demonstrated. Ms. Fitzsimmons had medical insurance through February 2013, AR 73. Thus, the ALJ's credibility determination with regard to her gaps in treatment was not in error.

### c. Ms. Fitzsimmons's daily activities

Finally, the ALJ noted several activities of daily living that are inconsistent with Ms. Fitzsimmons's assertion of disabling symptoms. AR 27. Ms. Fitzsimmons walks her dog, grocery shops, and does chores such as laundry. AR 67. Ms. Fitzsimmons admitted that regular activity actually improves her condition, so she tries to stay active. AR 63. These facts were all cited by the ALJ as examples of daily activities that are inconsistent with disabling pain and limitations. AR 27. While one does not need to be "utterly incapacitated" to be eligible for benefits, *see Fair,* 885 F.2d at 603, the record does not corroborate Plaintiff's assessment of severe limitations.

//

//

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17**

**C. The Court lacks jurisdiction to review the ALJ's dismissal of Ms. Fitzsimmons's Title II claim based on *res judicata*.**

Ms. Fitzsimmons filed prior applications for benefits that were denied on December 30, 2009. AR 39. Her date last insured was December 31, 2008. *Id.*; ECF No. 20 at 19. Ms. Fitzsimmons did not timely request review, so that decision became administratively final. *Id.* The ALJ determined that *res judicata* applied to Ms. Fitzsimmons's second Title II claim and dismissed the claim. AR 39-40.

While the principles of *res judicata* may apply to administrative proceedings, the doctrine is applied less rigidly than to judicial proceedings. *Lyle v. Sec. of Health & Human Serv.*, 700 F.2d 566, 568 n. 2 (9th Cir. 1983). In Social Security appeals, the doctrine of *res judicata* applies when a previous determination was made involving the claimant's rights on the same facts and on the same issue or issues, and this previous determination has become final by either administrative or judicial action. 20 C.F.R. § 404.957(c)(1). An ALJ may reopen a case when there are "changed circumstances" that warrant good cause for reopening a case. *See Chavez v. Bowen*, 844 F.2d 691, 693-94 (9th Cir. 1988).[1]

The decision to not reopen a previously adjudicated Social Security claim, however, is "purely discretionary" and not a "final" decision under 42 U.S.C. §

---

[1] Unlike the instant case, in `Chavez`, the second ALJ did not consider the first ALJ's findings, nor whether `res judicata` may have applied. *Chavez*, 844 F.2d at 692-93.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18**

405(g) that permits district court review. *Krumpelman v. Heckler,* 767 F.2d 586, 588 (9th Cir. 1985). (*citing Davis v. Schweiker*, 665 F.2d 934, 935 (9th Cir. 1982)). Therefore, generally, the district court lacks jurisdiction to review the Commissioner's decision to not reopen a final decision made after a hearing. *Krumpelman,* 767 F.2d at 588. Several courts, both in and out of the Ninth Circuit, have held this lack of jurisdiction extends to the review of claims denied on the basis of *res judicata*. *See Davis*, 665 F.2d at 935-36; *Matos v. Sec'y of HEW*, 581 F.2d 282 (1st Cir. 1978); *Hensley v. Califano*, 601 F.2d 216 (5th Cir. 1979); *Carney v. Califano*, 598 F.2d 472 (8th Cir. 1979). A claimant may get past this barrier if the ALJ improperly revoked the doctrine of *res judicata*. *Thompson v. Schweiker*, 665 F.2d 936, 941 (9th Cir. 1982).

Because it was not improperly applied, the decision to invoke *res* judicata is not reviewable by the district court. *See Davis*, 665 F.2d at 935-36. In *Davis*, the claimant's first application was denied and became final when she failed to request reconsideration or a hearing. *Id*. at 934-35. Her second application was denied by the ALJ on the grounds of administrative *res judicata*. *Id*. The court held that the failure to consider a single medical report that was unsupported by clinical evidence did not result in a "manifest injustice" that would provide an exception to the res judicata doctrine, and the court held it was without jurisdiction to examine her claim. *Id.* at 935-36.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 19

Similarly, Ms. Fitzsimmons presented a single medical opinion report that is unsupported by new clinical evidence or the record as a whole. *See supra* pp. 10-13. Because the ALJ did not improperly invoke the doctrine of *res judicata*, this Court lacks the jurisdiction to review the denial of Ms. Fitzsimmons's claim. The ALJ's decision is affirmed.

## VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 20**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 25,** is **GRANTED.**

3. The District Court Executive is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 24th day of March, 2016.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 20